

FILED

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OCT 25 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

<table>
<tr><td>

INTERNATIONAL LONGSHORE AND
WAREHOUSE UNION, LOCAL 40,

Plaintiff-Appellant,

v.

COLUMBIA GRAIN, INC., AKA
Willamette Stevedoring,

Defendant-Appellee.

</td><td>

No.    15-35620

D.C. No. 3:13-cv-00513-AC

MEMORANDUM[*]

</td></tr>
</table>

Appeal from the United States District Court
for the District of Oregon
John V. Acosta, Magistrate Judge, Presiding

Argued and Submitted October 4, 2017
Portland, Oregon

Before:  PAEZ and BEA, Circuit Judges, and LAMBERTH,[**] District Judge.

In this action under Section 301 of the Labor Management Relations Act

("LMRA"), 29 U.S.C. § 185(a), International Longshore and Warehouse Union,

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable Royce C. Lamberth, United States District Judge for the District of Columbia, sitting by designation.

Local 40 ("Local 40") seeks to compel arbitration of its lost-work grievances against Columbia Grain, Inc. ("CGI"). Local 40 argues that it has the authority to compel arbitration under the terms of the Pacific Coast Clerks Contract Document (the "White Book"), a collective bargaining agreement between International Longshore and Warehouse Union ("International Union") and the Pacific Maritime Association ("PMA").[1] Finding no error in the district court's Findings of Fact and Conclusions of Law, we affirm.

1. The district court correctly determined that the question of arbitrability was for the court to decide, not the arbitrator. As the Supreme Court recently said, "whether the parties have agreed to submit a particular dispute to arbitration is . . . an issue for judicial determination." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010). Arbitration is a contractual matter as "arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *Id.*; *see also McKinstry Co. v. Sheet Metal Workers Int'l Ass'n Local Union No. 16*, 859 F.2d 1382, 1384 (9th Cir. 1988) (providing that whether the parties can be compelled to arbitrate "is

---

[1] Willamette Stevedoring, a former subsidiary of CGI, was a member of the Pacific Maritime Association and therefore bound by the White Book, which includes provisions providing for arbitration of grievances. After CGI shut down Willamette Stevedoring, Local 40 brought this lawsuit alleging an alter ego theory against CGI.

ultimately decided by the court, not the arbitrator, on the basis of the contract entered into by the parties"). Where there is a question about whether the parties agreed to arbitrate a specific dispute, that question is resolved by the court. *See Granite Rock*, 561 U.S. at 297.

The essence of this case is whether there is an agreement to arbitrate the lost-work grievance between Local 40 and CGI. If Local 40 cannot enforce the White Book, then it does not have the right to compel arbitration. Therefore, under *Granite Rock*, the issue of arbitrability was for the district court to decide.

2.      Local 40 argues that it was entitled to enforce the White Book as either a party to the agreement or as a third-party beneficiary. However, we need not decide that question. Regardless of whether Local 40 was a party to or third-party beneficiary of the White Book, the Memorandum of Agreement ("MOA") entered into between the International Union and CGI forecloses Local 40's claim that it has the right to compel arbitration of its grievances.

3.      The MOA provides that the International Union and Locals 4, 8, and 19, "on behalf of themselves and all of their members . . . agree[] to waive, release and discharge the Employer, collectively and each company individually, from any and all claims, including any court claims, administrative claims, unfair labor practice

charges, or labor relations related claims." This provision effectively released any claims against CGI by Local 40 and its members.

Unions have the authority to bind their members to a settlement agreement absent allegations that the union's actions were made in bad faith or arbitrarily. *See Vaca v. Sipes*, 386 U.S. 171, 177, 190-91 (1967); *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 180 (1967) ("The employee may disagree with many of the union decisions but is bound by them."). Under Section 301 of the LMRA, "[a]ny labor organization which represents employees in an industry affecting commerce . . . shall be bound by the acts of its agents." 29 U.S.C. § 185(b). When the International Union's Committeeman, an elected representative of Local 40's supercargoes and clerks, executed the MOA, he had the authority to bind the members of Local 40. Therefore, the International Union could properly settle and release "any and all claims" by its members that had occurred prior to the MOA, which includes Local 40's lost-work grievances.

Further, the MOA covers Local 40. The settlement and release is "on behalf of [the signatories] and all of their members." The members of Local 40 are also members of the International Union. Additionally, Local 40 maintains that it is a member of the International Union for purposes of the White Book. The district

court did not err in concluding that the MOA encompasses Local 40, irrespective of the fact that it is not a named signatory to the agreement.

4.     The Side Letter of Agreement entered into by the International Union, Local 8, and CGI contemporaneously with the MOA does not exempt Local 40 from the MOA. The Side Letter of Agreement provided in relevant part that in the event CGI is ordered "to employ a Local 40 supercargo as a result of Local 40's current lawsuit against [CGI], then upon the hiring of a Local 40 supercargo, the [International Union] and its Local 8 agree that Shipboard manning levels will be reduced by one." This side agreement was a contingency plan in case Local 40 prevailed on its lost-work grievances and CGI was ordered to employ a member of Local 40. As a contingency agreement, the Side Letter does not exclude Local 40 from the terms of the MOA. Thus, the MOA settled and released the lost-work grievances on behalf of Local 40.

**AFFIRMED.**